27 C.C.P.A.(Patents)

## ALDEN v. BESSEY.
### Patent Appeal No. 4267.

Court of Customs and Patent Appeals.
Feb. 5, 1940.

Rehearing Denied March 20, 1940.

Hyland R. Johns, of New York City (Robert S. Allyn, of New York City and Elmer Stewart, of Washington, D.C., of counsel), for appellant.

Walter I. Jones, of Cambridge, Mass., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences in an interference proceeding. The subject matter is a socket for a vacuum tube, or like device. A single count is involved. It reads: "A socket for receiving and establishing electric contact with a rod-like contact, including an insulating base, said base having an aperture through which said rod-like contact may be projected, and a unitary contact spring, said spring having a mounting portion adapted to lie on a portion of said base adjacent said aperture to support said spring, said spring having a contact making portion extending through said aperture and depending below said base, said contact making portion having a back portion formed as a prolongation of said mounting portion, side portions directly connected only to the sides of the back portion and flexing thereabout upon axes longitudinal thereof, said side portions being substantially perpendicular to the base and extending parallel with the line of movement of said rod-like contact and being adapted to make contact with said rod-like contact along lines perpendicular to the base, *said side portions and back portion together providing a plurality of parallel line contacts and means for supporting at least one of said side portions from said base to prevent said contact making portion from bending at the junction of said mounting and contact making portions upon insertion of said rod-like contact."* (Italics ours.)

It is thought that the nature of the device is made clear by the count so that no detailed description of the whole of it is necessary. The controversial matter is indicated by the italicized clauses, supra.

The interference was declared between a patent, No. 2,017,940, issued to the party Bessey October 22, 1935, upon an application, serial No. 651,691, filed January 14, 1933, and an application of the party Alden, serial No. 676,453, filed June 19, 1933. It was incumbent upon Alden, the junior party, to establish his case by a preponderance of the evidence.

The count which, according to the statement in the declaration of interference is claim 16 of the Alden application, differs from claim 1 of the Bessey patent, but it was held by the Primary Examiner to correspond "substantially" to the latter and it was used as the count of the interference under the authority of Bonine v. Bliss, 1919 C. D., Patents, 75. No question is raised as to the correctness of this holding. The record does not disclose the date of the intro-

duction of the claim constituting the count, into Alden's application, but it was stated during the oral argument before us that it was presented after the issuance of the patent to Bessey.

Neither the Examiner of Interferences nor the board awarded any specific date or dates to the party Bessey for conception and reduction to practice. In his preliminary statement he claimed dates in August and September 1932 but he took no testimony and it is evident from the decisions that he was held to be confined to his filing date of January 14, 1933. The party Alden was awarded conception "prior to 1930," the features of the count being embodied in a device made prior to that time, but both tribunals concurred in holding that he failed to establish any actual reduction to practice and failed to show diligence during the critical period from just prior to January 14, 1933 (Bessey's filing date) up to May 22, 1933, when he directed the preparation of his patent application.

It is the contention of Alden that he proved actual reduction to practice prior to 1930 and that no question of diligence is involved.

The original sketches and the socket made prior to 1930 were lost and not available to be placed in evidence, but there was placed in evidence as Exhibit 4 a socket part made after that time which, it was testified, corresponded to the original, except that the one last made has four contact members while the first one had five, and there was some immaterial difference in the wire terminals of the two.

Exhibit 4 is quite simple in construction, a fact much emphasized by appellant in the argument before us. It consists of two thin, diamond-shaped, plates made of material, seemingly bakelite or the like, attached together by a hollow metallic rivet extending through a center circular opening in the plates. The top plate is provided with openings spaced about the center opening, these outer openings being arranged to receive the prongs of a tube or plug designed to be inserted in the socket before the two plates are fastened together by the central rivet. A contact member is designed for each prong. The contact members are of metal and have stem portions extending upwardly from the top plate. The lower ends of the members extend through the openings in the top plate, but not through the corresponding openings in the bottom plate. The lower ends of the members are split so that there are a series of elements, designated as "tabs," located between the two plates. Both parties show these features, and, according to a statement of the Primary Examiner, made in a decision on a motion by Alden to dissolve the interference (a matter not before us) the tabs constitute the distinguishing characteristic of both devices. Of them the Primary Examiner said: "These tabs form means which support the side portions of a spring contact to prevent bending at the junction of the mounting and contact making portions when a prong contract is being inserted."

Both the Examiner of Interferences and the board in their decisions quoted practically all of the evidence upon which appellant relies to establish actual reduction to practice. It is set forth in the decision of the former as follows (omitting the record page references):

"It is alleged by Alden that the original socket was tested as follows:

"Q. Was any test ever made in 1928 or 1929 of the device which you state you had made at that time? A. Yes.

"Q. And what type of test was made and with what results? A. Tubes were inserted in the sockets and then careful studies and observations made of the contacts to give the effect of a life test by repeated insertions of the prongs in the contacts.

"Q. And at that time had you had previous experience in the testing of sockets and socket contacts? A. Yes, I had been doing that for years.

"Q. And what was the result of the tests? A. It was a satisfactory contact.

"Q. And with respect to the socket as a whole? A. A satisfactory socket * * *.

"Gardner E. Bamford, a tool and die maker testifies that he was employed by the Alden Manufacturing Co. until he lost his job there in 1930 as a result of the insolvency of the company * * *. Bamford further testifies that he made a socket while employed by the Alden Co. having the features as set forth on pages 22 and 23 of the Alden record and by exhibit 7, page 29. He identifies exhibit 4 as being like the one which he made prior to 1930, except as to the wire connecting terminals * * *.

"Bamford's testimony as to tests on the socket allegedly made by him is as follows:

"Q. Do you know whether the socket that you made while with the Alden Manufacturing Company and under Mr. Alden's

instructions was ever tested to see if it would work? Did you test it in any way? A. Yes.

"Q. How did you test it? A. By mechanical test to fit the prongs to the socket.

"Q. And what was the result of those tests? A. A good mechanical contact.

"Q. Did you give it any different type of test than you usually give to sockets when you make them? A. No * * *."

The board commented upon the foregoing as follows:

"The Examiner of Interferences regarded these tests insufficient because they were not made under conditions which would show that there was a good electrical contact formed between the prong on the tube and the contact on the socket. The party Alden argues that since a good mechanical contact or tight fit was shown this signified a good electrical contact. He points out that Alden testified on page 14 that this kind of a test was the one usually given. He argues therefore that it must inherently have been a test of the electrical contacts.

"We are of the view that the tests were insufficient to show that the socket would achieve the principal result for which it was constructed. The patentee stresses to a great extent on page 1 of his patent specification the importance of the line contacts formed so that there will be satisfactory electrical connection formed and maintained between the parts. This is also emphasized, though to a lesser extent, on page 1 of the Alden application. The parties therefore in their original applications indicated they were mainly concerned with obtaining a socket with suitable contacts which would function satisfactorily in an electrical circuit. It is true that certain features of construction are involved in the count for properly retaining the contact in place in the socket and reinforce it and prevent it from bending. It is urged by the party Alden that since these features distinguish the invention over the prior art it was only necessary to make a mechanical test as to these features. We do not believe that merely a mechanical test is sufficient to demonstrate the utility of a device of this character because it has no other utility than to be used in an electrical circuit. The construction might be shown to properly support the prong of a tube without bending of the contact but it may still not be so constructed that it will pass current between the prong and contact. This must, in our opinion be shown to constitute a proper test. It does not follow that current will pass merely because on inspection the prong and contact appear to be closely engaged. It is our view therefore that the party Alden has failed to prove any reduction to practice."

In the decision of the Examiner of Interferences the following (referring to the Alden socket) was said: "It is further considered significant that no attempt was made at that time to commercialize the structure under consideration but that a different construction was developed for commercial production at that time * * *. This is indicative that what had been done on the socket under consideration was not considered satisfactory. That work was merely an abandoned experiment."

The board said:

"* * * Alden testified as follows concerning the commercial production of the invention which was alleged to have been tested.

"X Q. Did it go into commercial use by the Alden Manufacturing Company? A. No, it didn't. We chose another construction developed afterwards for immediate production.

"This testimony is indicative of the fact that the device alleged to have been tested was not deemed satisfactory. If it had been it would probably have been manufactured and sold instead of some other form."

We have quoted at length from the decisions below respecting the material questions in the case, largely because of the tenor of the brief on behalf of appellant. The spirit of the brief may be judged from its opening paragraphs, under the head of "Preview." They read:

"In lay language we feel dissatisfied because our client, Milton Alden, while apparently admitted to be something of an expert by reason of his having been an inventor and manufacturer of radio accessories and especially tube sockets since broadcasting began and domestic receiving sets first appeared, was in essence told by the Board of Appeals, who laid no claim to having had any practical experience in the art, that he had for years been testing sockets for radio tubes in a manner that was not sufficient to tell when they were commercially practicable.

"In more legal phraseology, the Board of Appeals took judicial (or non-judicial) notice of inaccurate, partial or misleading, and

irrelevant facts for the improper purpose of providing a basis upon which to speculate upon the subject of testing socket type connectors. The Board of Appeals seems to have cut corners around such time-tried safeguards to justice as ordinary rules of evidence, with the result that their findings of fact' and decree or judgment were at variance with the proofs—a situation which Chief Justice Marshall long ago regarded as reversible error because in violation of a rule about which he said 'No rule is better settled' (Crocket · v. Lee, 7 Wheat. [522], 523 [525], 5 L.Ed 513, 514). The sufficiency of simple tests used by a practical manufacturer for years is a special knowledge that should be determined only by proofs and not by judicial notice since such notice is intended only for facts of general knowledge. Concerning the taking of judicial notice in patent matters, the Supreme Court has said: 'This power is to be exercised by courts with caution. Care must be taken that the requisite notoriety exists. Every reasonable doubt upon the subject should be resolved promptly in the negative.' Brown v. Piper, 91 U.S. 37 [42], 23 L.Ed. 200, 202.

"The sufficiency of a test customarily used for years by a manufacturer is a subject that thould have been best disputed, if at all, by a qualified competitive manufacturer, but since that was not done in this case, the competitor has apparently acquiesced in the sufficiency of the test by not disputing it if he could have."

The remainder of the brief conforms to the spirit illustrated by the paragraphs just quoted. Taken as a whole, the argument on behalf of appellant is to the effect that because Alden had had experience in testing sockets for radio tubes his judgment as to the efficacy of the tests of the device here at issue should be accepted without question as constituting a reduction to practice of the device.

█ The tribunals of the Patent Office are charged with a responsibility to inventors and to the public which of necessity requires their doing more than accepting the opinions of those claiming inventions, however honorable those claimants may be. The integrity and experience of Alden were not questioned below, nor do we question them, but we do not concur in the view that the board took judicial knowledge of matters extraneous the record and determined the issue on the basis of those matters.

█ The board found from Alden's own testimony and from that of Bamford that nothing more than a mechanical test was shown to have been made, and held as a matter of law that more than this was required. The testimony shows that the plug was inserted in the socket and that it fit, but there was no showing that an electrical contact was made. It may be true—doubtless is true, for the witnesses so testify in effect—that it has been their custom to make no other than mechanical tests of sockets which they were developing, but it does not follow from that custom that such tests, where an issue arises concerning them, are sufficient to meet the requirements of the patent laws. The tabs here were, according to the Primary Examiner, a new development in the art—the only new feature embraced in the count. Obviously, the socket would be worthless if, for any reason, an electrical contact was not made. We think that to have been complete the test should have shown such contact. So, we concur with the views expressed below that the tests were not sufficient.

It is clear that diligence on the part of appellant during the critical period has not been established.

Appellant's second reason of appeal raises a question of estoppel, but the contention as to this was withdrawn during the oral argument before us. The matter of estoppel was discussed by both tribunals of the Patent Office and adjudged against appellant's contentions. In view of the course at the hearing before us, we need not discuss it.

The decision of the board is affirmed.

Affirmed.